1195 National Products v. Gamber-Johnson, Mr. Gallwitzer. Good morning. May it please the Court. My name is Arthur Gallwitzer. I represent the appellant Gamber-Johnson in this appeal. We respectfully request that the Court overturn the District Court's January 12, 2009 order for at least two reasons. First, the District Court misunderstood the scope of its power to adjudicate Gamber-Johnson's counterclaim for declaratory judgment of unenforceability, and that led the District Court to resolve that claim without following the rules of civil procedure and without notice to Gamber-Johnson. But declaratory judgment is not obligatory. The Court, whatever reason it gave, still had discretion, did it not, to consider the issues that were raised in the declaratory complaint? Absolutely, Your Honor. Declaratory judgment jurisdiction by virtue of the statute is discretionary, but in this case, the District Court never stated that it was rejecting jurisdiction out of its discretion. So there's no findings for this Court to review for abuse of discretion. Instead, what the District Court did on April 23, 2008, was grant Gamber-Johnson leave to file its counterclaim, and then in its January 12 order, the District Court demonstrates that it thought that its power was somehow curtailed or constrained, and it resolved the matter as if it was a post-judgment Rule 54 motion. The District... Putting aside the District Court's tentativeness and confusion about this whole thing, once the covenant not to sue was established, the District Court lost jurisdiction over any declaratory judgment because there was no case of controversy. We respectfully disagree with that, Your Honor. The District Court seems to be trying to bridge the gap between the Supreme Court's decision in Metamune and this Court's decision in Monsanto. And under Monsanto, well, the District Court thought that Section 285, the attorney fee remedy statute, was the basis for jurisdiction, and therefore, the Court stated that it thought that its jurisdiction was less complete than in other civil actions. But jurisdiction actually derives from Sections 1331 and 1338 of Title 28, and the Declaratory Judgment Act and Section 285 are remedies. And Monsanto held that because of that remedial provision of 285, when that is disputed by the parties, you still have a case or controversy. The parties here disputed Amber Johnson's entitlement to fees. That gives rise to a case or controversy. That means that this case is different than other cases before this Court where the Court held that a covenant not to sue mooted the counterclaims. Go ahead. Well, I was just saying that that isn't really what happened, though, is that after the Court decided that there was no basis for deciding whether there had been inequitable conduct, then there was no longer a controversy, not as a matter of jurisdiction of the issues under 285, but the premises for the award of attorney fees under 285. That procedurally is correct, Your Honor, but the problem with that is the Court reached the conclusion Your Honor described after following a faulty procedure because the District Court misunderstood the scope of its power to adjudicate this counterclaim. The Court had jurisdiction under Section 1331 and 1338, and the- Had jurisdiction? Tell me again how they had jurisdiction under 1331. We start with whether or not there's subject matter jurisdiction under Article 3 of the Constitution and the statutes that provide for jurisdiction. This is a case brought under the Patent Act, so we have subject matter federal question jurisdiction under 1331. But wait a minute. That case has disappeared. The infringement case has disappeared. That's correct, Your Honor. So there's no jurisdiction under the complaint brought under 1331? That's correct, but- How is- What is the retained jurisdiction that the District Court has at that point? The District Court granted Gamber Johnson leave to file a counterclaim, and that decision was proper, and that's the heart of this matter. But they can't- How could you file a counterclaim to a non-suit? The counterclaim was leave was granted by the District Court to file- The question is not what the District Court did. The question is what the law permits. The suit, the infringement suit was brought and disappears because of the covenant not to sue. Right? Right. That's over. We're now writing on a clean slate, and now you come in and say, oh, I've got a counterclaim or a declaratory judgment. Right? That's treated as a declaratory judgment. The first thing you have to show is that there is a real threat, i.e. in Article 3 case of controversy, but there's no showing of that because you're sitting there with a covenant not to sue. Under Monsanto, Your Honor, the covenant not to sue does not fully resolve the matter. Same thing with Revolution Eyewear, and the parties still had a real dispute over whether or not Gamber Johnson was entitled to its attorney fees under Section 285. That's a misreading of Monsanto, I believe. We respectfully disagree, Your Honor. The Monsanto court held that the covenant not to sue relating to three of the four patents did not divest the District Court of Power to resolve- Monsanto is a declaratory judgment plaintiff and is seeking, among other things, a declaration of unenforceability on all four patents. The defendant gives a covenant not to sue on three of the four. The case proceeds on the fourth patent, and the District Court ultimately enters a finding of unenforceability on all four patents. We believe that is consistent with MetaMun and Benetech and SuperSAC and this court's precedent because the key distinction here is there still is a remedy being fought over by the parties. MetaMun- The key distinction is there was jurisdiction under the fourth patent. Whether the judge should have been able to reach the inequitable conduct of the three that were no longer before is a question that could be tied back to the 295 issue, but there's no question that in Monsanto there was jurisdiction under the fourth patent. In your case, there's no jurisdiction. We also disagree, Your Honor, because the file its counterclaim. Those things happen simultaneously, and therefore the court still had jurisdiction over this case. It properly believed that Section 285 allowed the District Court to proceed. It just did not fully understand the scope of that proceeding. It thought it was somewhere in between somewhat something less than resolution of a full civil suit and ended up because then that leads to a truncated procedure in which ultimately Gamber-Johnson's counterclaim is dismissed without any notice, which in Finn Control and Ilor versus Google, this court has said is improper. Those are sua sponte dismissals based on summary judgment, but the point still holds. In Revolution Eyewear, there was a covenant not to sue, a case decided just this past spring, and this court held that- You suggest you had no notice. The court repeatedly said it would review nothing but the 285 attorney's fees because it didn't believe it had jurisdiction over the rest. There's a lot of anger on this dispute. The idea that you had no notice doesn't seem right. We respectfully disagree because while the court's reasoning in its April 23rd order seems somewhat inconsistent. You have a point heading that says there is subject matter jurisdiction. You have a concluding paragraph that says we grant Gamber-Johnson. The court grants Gamber-Johnson leave to file its counterclaim. Then you have NPI moving for reconsideration asking for- Are you talking about when they leave to amend the complaint to add the inequitable conduct? That's correct, Your Honor. Okay, but the district court actually explicitly said that they had no jurisdiction except as to leave to amend. He also made it clear to you that he was not intending to decide or assume jurisdiction over the entire thing, but rather only pursuant to the attorney's fees motion. That's true. How did you have no notice? He told you, I'll let you amend, but under this limited circumstance. Except the record goes on from there, Your Honor, and that's where NPI asks for clarification, asks for reconsideration, asks for final judgment- He kept saying, no, no, no. To them. The district court repeatedly states that it could have dismissed our counterclaim, but did not, and that this case- Because he wanted to decide the 285 motion because he still retained jurisdiction over it. Exactly, Your Honor, but then the court asks the parties, compels the parties to brief a motion for attorney fees, even though it has granted Gamber-Johnson leave to file a counterclaim. Upon resolution- For purpose of deciding the attorney's fees motion. Exactly, Your Honor, but that's what we argue is incorrect, that there is no such thing as this sort of jurisdiction. Either the court is granting us leave to file a counterclaim, and it's properly done, or this is a final judgment and there's a Rule 54 post-judgment motion. What we ended up with something in the middle, and on January 12th, we're surprised to not only the motion was denied, but the entire counterclaim had been dismissed without discovery, without summary judgment, without Rule 12 motions, without the procedures that are guaranteed by the Federal Rules of Civil Procedure to protect the rights of a party on either side of a claim. Under the counterclaim? Under the counterclaim. But if the counterclaim wasn't properly before the court, then all those rights disappeared, don't they? If the counterclaim is not before the court, that's correct, but we argue that it is in light of Monsanto. And even if, I'd argue that even if Monsanto doesn't, if Your Honor seems to disagree with our reading of Monsanto, the court's prior decision- No, I agree with your reading. You explained very correctly that three of the four counts were dismissed, but there was a fourth one, three of the four patents, but there was a fourth one in litigation. I agree with that entirely. Your Honor, I see that I'm into my rebuttal time, if I may- You are. Let's hear from the other side, and we'll take up from there as we need to. Mr. Tellickson. May it please the court, my name is David Tellickson, and I represent the Appalachee National Products Inc. in this matter. And as has been discussed already this morning, once National Products rendered its complete and unequivocal covenant not to sue Gamber Johnson under the 611 patent for past, present, and future products, this is not a revolutionary eyewear's case where there was no claim as to the future. That divested the District Court of Jurisdiction over NPI's claims, and also any counterclaims brought by Gamber Johnson. Despite our discussion with Mr. Goldwasser, there is a troubling aspect here. Suppose, for example, and there's no indication that this hypothetical might apply here, but suppose in the course of the pretrial procedures, as far as they got, including where this patentee discovered that it had no basis for its claim, it turns out that there is indeed a legitimate open and shut case of inequitable conduct in prosecution of the patents in the patent office. And that comes perhaps as a surprise to the patentee's counsel as well. I think people don't always know what should or should not have been done in the patent office. On the premise on which we're now operating, and based on the District Court's decision, the patentee could drop the action, covenant not to sue for infringement, take its seriously flawed patents away from the court where they have previously been appropriately placed by straightforward counterclaim, and keep those patents untouched and untouchable. Is that doesn't seem to be a socially desirable result either. Well, Your Honor, I think in that instance, it would have seen the light of day in this case, in the context of this 285 jurisdiction. There was jurisdiction to hear 285. And as we've seen in Monsanto and other cases, under 285, the court can make findings of fact as to inequitable conduct and declare patents unenforceable under its 285 rubric and its fact finding power under that jurisdiction. It's a limited jurisdiction, and it doesn't need to full-blown discovery. It doesn't need to be trial. It's within the discretion of the judge. They didn't get that far, really, to determine if, in fact, the only basis for the request under 285 is the hunt for inequitable conduct or the possible inequitable conduct. I have no idea what already is in the record and what they might think might be proved, not the question of whether the suit should or should not have been brought in the first place, but only the possible inequitable conduct issue, I gather, is the only premise for the attorney fee request. As I understand it, Your Honor. One would assume that the court, if it were to permit proceeding, would appropriately limit the issues. I think the district court, if it had any inkling that there was some basis for this but it didn't see anything that... Nothing in the record to show it got that far. Well, Danbury-Johnson filed its motion for attorney's fees, and the court said, I want you to tell me everything you know and put all the facts in the record so I can decide. At that point, the possibility of discovery was still open. The court said, I want you to tell me why you're entitled to discovery. The one issue that they actually raised with this court, the primary basis that they claim there's inequitable conduct is this product CF-28, which was known and was not disclosed to the patent office. It was fully within their power to put a factual record before the district court explaining why that was material, how it compared to the claims, how it was different from the prior art. There were a number of patents and other devices in front of the patent office that were the same as the CF-28. It was a basic standard device. There was nothing different about what was before the patent office. So without discovery, they had the power to make a record and at least show that the CF-28 was material, and they didn't even try to do that. What I'm really thinking about is whether, in fact, here we've got disputed issues of fact, and the appellant says that there should have been an opportunity to resolve these because it might show inequitable conduct, and then the court in its discretion might say you're entitled to attorney's fees. And this judge didn't let that entire procedure get off the ground, get started. Now, on balance, I must say that it cuts off a lot of fishing at the threshold, saves everybody's resources, and there doesn't seem to be anything to shock the conscience. But I wonder, nevertheless, if, in fact, there were to be a rigorous rule because there is no remaining controversy about infringement. And we know that somebody who doesn't like the looks of adverse patents can't just go to the prosecution. So at the same time, is that an appropriate issue for a blanket rule to put an end to this kind of discussion? I think it is, Your Honor. I think under the Constitution, there needs to either be Article III jurisdiction or there needs to be jurisdiction under 285. Those are the only two ways that an issue of inequitable conduct can be resolved by a district court. And neither the Article III jurisdiction didn't exist here. Under 285, he gave it a full hearing. He let them put in their best evidence. He listened to them. He listened to why they might want more discovery. He didn't see anything. There was nothing there that caught his attention that said, okay, let's go further. I mean, if there was something that smelled bad to him, I think he would have given discovery. But there was nothing there. It was a mistake as to the CF-29 and the product that was actually to the client was a different product. Once that was resolved, the case was dismissed, as the judge noted. Why does he have authority under 285 to reach the attorney's fees issue as an inequitable conduct issue? Once the covenant not to sue is in place, why does he have authority to reach the defenses? Well, I think under Monsanto, I think he arguably can address 285. They had pled 285 in their complaint as a boilerplate claim. So he said, that's in the case, and I'm going to have jurisdiction over it. Yes, but if there had been a covenant not to sue in advance, so that you hadn't brought a suit, would they be allowed to bring a DJ looking for inequitable conduct findings in 285? They would not. So why does he have jurisdiction? I understand what Monsanto says. I'm just kind of perplexed by it. While I realize I'm bound by it, I do recognize, though, that there were four patents at issue. At least in that case, they were all related, hence the inequitable conduct charges related equally to all four of them. One of them was still before the court. So perhaps that's a reason not to read 285 the way the district court did, in this case, as giving him jurisdiction over something which is not at all any longer a dispute. I think that's a reasonable interpretation. I think he felt he was bound by Monsanto, and he bent over backwards to give them every chance under 285. But I think once it's clear that this case isn't going forward, it's in its infancy. This is in the first few weeks of the case. This is distinct from a lot of the factual situations in other cases where there's been even trials. There's been discovery. I mean, this was, as the judge pointed out, once it came to light that this product was out a few months earlier than thought, the case was dismissed. So I think at that point you could say the entire case is over, there's no jurisdiction for anything. But as a conservative matter, he followed Monsanto, and he went through the full-blown 285 procedure, gave them their day in court on that issue, dismissed it so there was no conduct. Well, their argument is he didn't give them their day in court on the issue, right? He didn't dismiss it under Rule 12, he didn't summary judgment under 56 and give them the protections they'd be afforded there, and he certainly didn't have a trial on the issue. Yeah, he said they did not have their full day in court, but he explained and explored that issue at length in his April 23rd order and then a number of other times. He talked about how this was not, you know, full-blown jurisdiction, so that if there was more robust jurisdictional foundation- So there's robust and weak jurisdiction? Well, I think the language in these cases- I mean, like a little bit pregnant? Yeah, there's a little- I mean, they talk about collateral jurisdiction over collateral issues, and exactly what the proper name is for the jurisdiction he has over 285. I'm not sure I could put my finger on it because different words are used in different cases, but he knows it's not the type of jurisdiction that requires him to have a trial on the merits on the full-blown inequitable conduct. He has jurisdiction over 285, and that's a special and limited jurisdiction where he only needs to find facts necessary to decide whether he needs to award attorney's fees under 285, and he did that. In the Digio case and other cases, say, I don't need to award or allow discovery if I don't see the need. I don't need to have a trial. That's the he said, and he made that very clear from the start. We urged him to actually dismiss the counterclaim. He said, it doesn't matter because I'm only considering that within the 285 rubric. I'm not having a full-blown trial on the merits on inequitable conduct. Jurisdiction is probably the single most important predicate that a federal court can have. I think Judge Moore's question goes to a very central issue in this case. I have trouble conceiving of weak jurisdiction or slight jurisdiction or more. You either have jurisdiction or you do not have jurisdiction. Let's assume for the moment the court, as a result of the covenant not to sue, lost all jurisdiction. Then where are we? Then I think the correct result was reached perhaps through a route that he should not have taken, but I think the end result was correct, so the judgment should be affirmed because if he didn't have jurisdiction from the time the covenant not to sue was provided, then the case should have been over back then, but he went forward and adjudicated or attempted to look at this 285 issue. If he didn't have jurisdiction, he shouldn't have been doing those things, but the end result is correct. The end result is ultimately a dismissal, and perhaps on the wrong ground, perhaps on the right ground, but your argument is the dismissal is all that he could have done. All that he could have and should have done. When Gamber Johnson wanted to have full-blown discovery, we asked the court for reconsideration because we thought the precise thing he should have done was deny their motion to bring the counterclaims into the case, and if he wanted to proceed on 285, he could have still addressed the same facts, but he wouldn't have called it... Isn't it basically unfair to pick up on our presiding judge's question? Isn't it basically unfair for someone to bring a suit, have it shown to the trial court that that suit was improvidently brought, it was an equitable conduct, fraud, corruption. I'm not necessarily describing your case, but we're using a hypothetical case, and then to have the wrongdoing plaintiff escape totally by simply saying, okay, I'll promise not to sue you on those particular products, although I'm going to reserve the right to get you later on something else. Can a party withdraw total jurisdiction in that manner? Does that sound fair to you? Well, I think it would be proper to do that. There certainly was none of that in this case, Your Honor, but I think the dissent in the Fort James case, I believe it was, got it right when he said that jurisdiction doesn't look at equities. It either has jurisdiction or not, and it's not something where you should say, well, it would be unfair for me to not proceed even though I don't really have jurisdiction. So if the court doesn't have jurisdiction, the court can't hear it. And these questions of, well, is somebody getting away with something, or is this bad patent going to sit in someone's drawer for 20 years? I don't think those are questions the court can answer, because if you don't have jurisdiction, you can't proceed with the cause of action. And I don't think the fact that somebody is maybe going to have a bad patent out there, you should only adjudicate patents when there's a real case of controversy. That's what the law says. Okay. Any more questions? Thank you, Your Honor. Thank you, Mr. Tillotson. Mr. Galwitz, sir. Your Honor, I'd like to start by picking up on one of the first things that opposing counsel stated, and that is that this covenant not to sue is broad. If we look at page 171 of the record, that's not true. This covenant not to sue is not cover past, present, and future infringements. It was limited to this patent, not other patents in the same family, and this product, not other products offered by Gamber Johnson. In fact, the plaintiff has sued us just a few weeks ago on another patent in this family. But wasn't it, it was limited to the issues that had been raised in the complaint? In this case? The covenant not to sue is specifically expressly limited to the product identified in the complaint. So we don't know, from what you say, there's an opportunity to challenge the patents and everything else in this other case that's been filed? There is now. This was filed on August 25th, and we filed an amended statement of related cases last week, Your Honor. When the covenant was filed in this case, was it negotiated? Was there unilaterally filed? Unilaterally filed, Your Honor. Second, I'd like to pick up on the questions from Judge Plager and Judge Moore, because jurisdiction is the key. We, again, agree that there's no such thing as limited jurisdiction. Section 285 is a remedy statute. It's in Chapter 29 of the Patent Act. That's a remedial chapter. Jurisdiction has to come from some other source. So either there's Article III jurisdiction, or there isn't. And in this case, if we start with the Supreme Court's ruling in Cardinal Chemical, where the court is talking about appellate jurisdiction, but it's instructive, as Judge Dyke pointed out in his dissent in Benetech, that it is unfair for a plaintiff to be able to deprive the defendant the chance to defend itself, have to wait under the proverbial sword of Damocles for the next case. Cardinal Chemical said that for the appellate court, a finding of non-infringement meant that the appellate court shouldn't automatically vacate findings of invalidity. That's instructive. The Supreme Court said there was only a narrow exception for unusual circumstances. But instead, that exception has gone from being unusual and narrow to being more of the rule, except for in Monsanto, where this court understood that where there's a dispute over a remedy, that that is exactly the kind of case or controversy the Supreme Court had in Metamune. Metamune describes case or controversy in a couple different ways. And one of them is when the dispute admits of a specific remedy. That's from the Supreme Court's language in Metamune. Here, there was a specific remedy, the claim for attorney fees, as well as the claim for a declaration of unenforceability. And the parties still disputed those things. And the district court understood that. The district court just misunderstood the scope of its power to go ahead and resolve the issue. It tried to chart this in-between course between a post-judgment rule 54 motion and full-blown jurisdiction. Counsel, this is only a request for remedies related to the fact that they brought a suit against you. You don't have an independent right, absent case or controversy, to bring in inequitable conduct, declaratory judgment, and extract exceptional case fee without a path to. I partially agree and disagree, Your Honor. If there was, let's take a hypothetical where the plaintiff had threatened to sue us. Well, that's why I said absent a case or controversy. Right. But therefore, in this case, they actually, NPI, had sued us. And that case had not yet been dismissed. Again, the court dismissed the plaintiff's claims and granted Gamber-Johnson leave to file a counterclaim in the same order. And in that order, the court recognized that there was this dispute over the remedy. That's what makes us different than Benetech and some of the other cases where a covenant not to sue mooted the counterclaim because there still is this dispute here. Samsung is instructive. That's a case where this court found that when the plaintiff went one step further, it offered to pay the attorney fees of the defendant. Then the 285 dispute was also resolved and the case was over. But that didn't happen here. We have a dispute over the 285 fees, giving rise to a case or controversy. Well, your request for fees was under 285, not under any other aspect of the rules. Isn't that correct? That's correct. And 285 is key to the complaint. I should have asked this question of Tillotson. Let me take a moment and ask it of you. I'm looking at page 171 of the appendix, which has the release and covenant not to sue. And the covenant not to sue says, now, therefore, it is hereby agreed that NPI releases Gamber from all liability for infringement of the 611 patent alleged in the complaint, specifically including the Panasonic Toughbook. And then it goes on and says, NPI further unconditionally promises covenants that shall not bring any action in Gamber for patent infringement of any claim of 611 patent in connection with those products accused in the complaint. It seems to have a large covenant and then a small covenant. Do you read that large covenant as essentially saying no suit can ever be brought by them under the 611 patent for any product? Before I answer, your honor, I see my time is up. May I continue? Please answer the question. Gamber Johnson's position is, yes, that the covenant should be read broadly. But because of the inconsistency your honor pointed out, we can envision NPI arguing for a narrower reading in future litigation between the parties as there are several other pending suits going on between the parties. But for our purposes here, we can read it as broadly as they wrote it and determine that therefore the court lost jurisdiction totally if we need to. Two answers to that. One, the court could do that as long as NPI is then bound by that going forward. But Gamber Johnson still believes that district court would have jurisdiction because of the dispute over fees. I understand your point. Thank you. Thank you. Thank you, Mr. Garlitzer. Mr. Chalikson, the case is taken under submission. Thank you.